**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **TIMOTHY LEE GENTRY, 14627-032,** ) | |
| **NATHAN ALLEN DeBRUZZI, 21186-041,** ) | |
| ) | |
| **Petitioners,** ) | |
| ) | |
| vs. ) | Case No. 20-cv-00360-JPG |
| ) | |
| **MICHAEL CARVAJAL and** ) | |
| **WILLIAM BARR,** ) | |
| ) | |
| **Respondents.** ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

This matter is before the Court for consideration of Respondent Michael Carvajal's Motion to Dismiss Petition for Writ of Mandamus for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 10) and Petitioners Timothy Gentry's and Nathan DeBruzzi's Amended Petitions for Writ of Mandamus (Docs. 23 and 29). For the reasons set forth below, the Motion to Dismiss shall be **GRANTED**, and the Amended Petitions shall be **DISMISSED**.

**Background**

**A.      Petition for Writ of Mandamus (Doc. 1)**

Petitioners Timothy Lee Gentry and Nathan Allen DeBruzzi are both in the custody of the Federal Bureau of Prisons ("BOP") and are currently confined together in the Special Housing Unit ("SHU") at the Federal Correctional Institution in Greenville, Illinois ("FCI-Greenville"). On April 16, 2020, Gentry filed a Petition for Writ of Mandamus (Doc. 1) pursuant to 28 U.S.C. § 1361 complaining that BOP officials designated the SHU as a "quarantine zone" for inmates suffering from suspected or confirmed cases of COVID-19. (Doc. 1, pp. 1-7). Gentry indicated that BOP officials planned to transfer these inmates into the SHU and place them in cells near

1

inmates who are not suspected of having COVID-19. To protect against spread of the virus, inmates were issued a single paper face mask and 3-in-1 shaving gel/soap/body wash. Gentry's requests for personal protective equipment—including latex gloves, hand sanitizer, antibacterial soap, and additional masks—were denied. His request for the BOP's infectious disease and quarantine protocols was also denied.

Gentry filed the underlying Petition for Writ of Mandamus to obtain a Court Order requiring the BOP Director and the United States of America to provide all BOP inmates with: (1) a copy of the BOP's protocol for addressing infectious disease and quarantine zones; (2) separate housing for inmates with confirmed or suspected cases of COVID-19; (3) personal protective equipment such as masks and latex gloves; and (4) hand sanitizer and/or antibacterial soap. (*Id*.). The Petition survived preliminary review under 28 U.S.C. § 1915A against current BOP Director Michael Carvajal, and the Court ordered the Government to file an expedited response. (Doc. 6).

**B.     Government Response (Doc. 10)**

The Government filed a Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) and Response on May 4, 2020. (Doc. 10). The Government maintains that Gentry failed to satisfy the requirements for obtaining any relief under 28 U.S.C. § 1361. More specifically, he failed to identify "any plainly defined, mandatory duty" compelling the BOP to respond to the COVID-19 pandemic in a particular way or to provide him with any particular relief. (*Id*. at 7). The Government asserts that the BOP has only been given general guidelines for managing infectious disease at BOP facilities. According to 28 C.F.R. § 549.10, for example, the "Bureau will manage infectious diseases in the confined environment of a correctional setting through a comprehensive approach which includes testing, appropriate treatment, prevention, education, and infection

control measures." (Doc. 10, p. 5). Program Statement 6190.04 further provides that each institution's health services administrator ("HSA") and clinical director ("CD") are responsible for operating an infectious disease program that is consistent with applicable laws and regulations. (*Id*.). Neither the regulation nor the program statement outline a specific response to the pandemic. Absent any violation of a "plainly defined, mandatory duty," no relief is warranted under § 1361.

The Government nevertheless describes steps BOP officials have taken to control the spread of the novel coronavirus, consistent with evolving standards for correctional facilities outlined by the Center for Disease Control and Prevention ("CDC").[1] (*Id*. at 5-6). For example, in light of the COVID-19 pandemic, the BOP has modified its operations by suspending visitation at the facilities, reducing inmate movement, requiring frequent handwashing with soap, and issuing masks to inmates with suspected or diagnosed cases of COVID-19. (*Id*.). The BOP has taken these steps to encourage social distancing to the extent possible at FCI-Greenville. (*Id*.). Gentry admittedly lacks knowledge of these protocols and the rate of COVID-19 infection.

According to the Government, BOP efforts have been successful to date. (*Id*.). As of May 4, 2020, there were no inmates or staff with known COVID-19 infections at FCI-Greenville. (*Id*. at 2). As of July 1, 2020, a single inmate, who was a new arrival, tested positive for COVID-19 and was placed in a negative pressure room in FCI-Greenville's medical unit until testing negative twice. (Doc. 40). He was then placed in quarantine for fourteen (14) days. (*Id*.). The inmate had no contact with other inmates in the SHU or general population. (*Id*.). The Government notes that Gentry might have learned this information and/or obtained the relief he requests here by using the prison's administrative remedies process, but he failed to do so in violation of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

---

[1] *See* Doc. 10, p. 5 (citing https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html ) (site last visited May 4, 2020). *See also* Exhibit 3.

### C.     Amended Petitions for Writ of Mandamus (Docs. 23 and 29)

Gentry was given an opportunity to respond to the Government's Motion to Dismiss on or before May 15, 2020. (Doc. 14). Instead of doing so, Gentry filed a Motion for Leave to Amend Petition *without* submitting a proposed Amended Petition on May 6, 2020. (Doc. 15). In the Motion, he pointed out certain "clerical errors" and "misunderstandings" in the original Petition (Doc. 1) and Screening Order (Doc. 6). (*Id*.). Because he did not provide a response to the Government's Motion to Dismiss or offer a proposed Amended Petition prior to May 15, 2020, however, the Court extended Gentry's deadline for filing a response and/or amending the petition to July 1, 2020. (Doc. 20). On June 1, 2020 and June 29, 2002, Petitioner Gentry and Intervenor-Petitioner DeBruzzi filed the same Amended Petition for Writ of Mandamus.[2] (Docs. 23 and 29).

In the Amended Petition, Gentry and DeBruzzi pointed to a single instance in which an FCI-Greenville inmate, Williams, was prematurely returned to a cell he shared with Inmate Morris after receiving treatment at an outside hospital on May 5, 2020. (Docs. 23 and 29, pp. 3-4). The failure to quarantine Inmate Williams resulted in the need to quarantine both inmates. (*Id*. at 4). This "human error" allegedly put everyone at risk. (*Id*.). Petitioners maintain that their release from confinement should be granted before an outbreak occurs to avoid violations of their rights under the Eighth and/or Fifth Amendments, and exhaustion of administrative remedies should not be required under the circumstances. (*Id*. at 3). Gentry and DeBruzzi seek immediate release to home confinement for the duration of their sentences or satisfaction of the judgments against them and, in the meantime, access to a bottle of pure bleach and unlimited phone use. (Docs. 23 and 29).

---

[2] DeBruzzi sought and received permission to intervene as a co-petitioner in this action. (*See* Docs. 21, 33, and 36).

4

**<u>Analysis</u>**

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") is to decide the adequacy of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In order to survive a Rule 12(b)(6) motion, the complaint must allege enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible when the petitioner "pleads factual content that allows the court to draw the reasonable inference that the [respondent] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A petitioner need not plead detailed factual allegations, but he or she must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 570. When considering a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept well-pleaded facts as true and draw all possible inferences in favor of the petitioner. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012). However, the Court may take judicial notice of matters in the public record. *Palay v. United States*, 349 F.3d 418, 425, n. 5 (7th Cir. 2003). This includes information set forth in a government publication. *Qui Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013) ("A document posted on a government website is presumptively authentic if government sponsorship can be verified by visiting the website itself.").

Upon review of the original Petition (Doc. 1) and the Amended Petitions (Docs. 23 and 29), the Court finds that Petitioners are not entitled to relief under 28 U.S.C. § 1361. Section 1361 authorizes a federal court to compel a federal official or agency to perform a duty owed to the petitioner. *See* 28 U.S.C. § 1361. The following three elements must be met to issue a writ: "(1) a clear right in the [petitioner] to the relief sought; (2) a plainly defined and peremptory duty on the

part of the [respondent] to do the act in question; and (3) no other adequate remedy at law." *Burnett v. Bowen*, 830 F.2d 731, 739 (7th Cir. 1987). A writ is an extraordinary remedy. *Banks v. Secretary of Indiana Family and Soc. Servs. Admin.*, 997 F.2d 231, 244 (7th Cir. 1993). Therefore, if any element is missing, the Court must deny a petition. *Ahmed v. Dept. of Homeland Security*, 328 F.3d 383, 387 (7th Cir. 2003).

Upon review, the Court finds that the original Petition (Doc. 1) and Amended Petitions (Docs. 23 and 29) do not satisfy the first and second requirements for issuance of a writ. Petitioners pointed to no plainly defined duty on the part of BOP Director Carvajal or Attorney General Barr to perform any of the acts in question. This includes providing all BOP inmates with a copy of the BOP's infectious disease/quarantine protocols, separate housing for inmates with confirmed or suspected cases of COVID-19, or personal protective equipment beyond what is already provided. (*See* Doc. 1). The Government points to regulations and program statements governing the management and control of infectious disease in BOP facilities, but these provisions are general. *See, e.g.*, 28 C.F.R. § 549.10; P.S. 6190.04. They impart no duty on BOP officials to take the specific steps Petitioners asked this Court to compel the officials to take in the original Petition. The BOP has nevertheless shared details regarding the safety, housing, and sanitation protocols implemented in BOP facilities and FCI-Greenville. These protocols include social distancing, restricted movement, and issuance of PPE in situations recommended by the CDC. *See* Doc. 10, pp. 4-5) (citing *Bodnar v. Lake County Jail, et al.*, 2:20-CV-157-PPS-APR, 2020 WL 1940742, at *2 (N.D. Ind. Apr. 22, 2020) (taking judicial notice of the CDC guidelines for managing COVID-19 in correctional settings when deciding a Rule 12(b)(6) motion to dismiss brought by an inmate)). Petitioners point to no violation of these guidelines.

In addition, neither Petitioner demonstrated a clear right to the relief sought, including

release from imprisonment and satisfaction of the judgments against him.  (*See* Docs. 23 and 29).  Neither form of relief would be appropriate here, where Gentry and DeBruzzi simply question the protocols in place for controlling infectious disease, quarantining inmates, and providing personal protective equipment.  They cite no pre-existing conditions that make them more vulnerable to infection and admit that they are largely unaware of existing protocols and infection rates at the facility.  They certainly do not suggest that Inmate Williams was anywhere near them or posed any actual risk to them.  If either inmate wishes to pursue a request for release from confinement, however, he may file a separate habeas action pursuant to 28 U.S.C. § 2241 and/or motion for compassionate release pursuant to Section 603(b) of the First Step Act of 2018 after first exhausting his remedies.  (*See* Order at Doc. 20).

This brings the Court to its final point, which is that Petitioners appear to have disregarded the third requirement for mandamus relief by failing to demonstrate the unavailability of other remedies.  In response to the Government's assertion that Petitioners could have, but failed, to use the internal grievance process to address their concerns, Petitioners simply ask the Court to suspend this requirement because of the pandemic.  However, the Court cannot overlook this requirement and the need to exhaust other avenues to relief before petitioning the Court for mandamus relief.  This relief is considered extraordinary and, in this particular case, unwarranted.

Because relief is unavailable under 28 U.S.C. § 1361, Respondent's Motion to Dismiss (Doc. 10) shall be granted, and Petitioners' Amended Petitions (Docs. 23 and 29) shall be dismissed.  This Order does not preclude Petitioners from pursuing relief under § 2241, § 603(b) of the First Step Act of 2018, *Bivens*, or otherwise.  The Court takes no position on the merits of such claims.

7

**Disposition**

**IT IS HEREBY ORDERED** that Respondent's Motion to Dismiss Petition for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 10) is **GRANTED**, and the Amended Petitions (Docs. 23 and 29) are **DISMISSED** with prejudice.  Petitioners Gentry and DeBruzzi are **ADVISED** that the dismissal shall count as an allotted "strike" under 28 U.S.C. § 1915(g).

**IT IS ALSO ORDERED** that each Petitioner's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $400.00 for Petitioner DeBruzzi and $350.00 for Petitioner Gentry remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Petitioners wish to appeal this dismissal, a notice of appeal must be filed with this Court within sixty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  If Petitioners choose to appeal, they will each be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).  Finally, if the appeal is found to be nonmeritorious, Petitioners may also incur another "strike."  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk is directed to **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: July 10, 2020**               s/J. Phil Gilbert
                                       **J. PHIL GILBERT**
                                       **United States District Judge**